**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | | |
|---|---|---|
| **Darfon America Corp.**,<br>Plaintiff,<br><br>**v.**<br><br>U.S. CUSTOMS AND BORDER PROTECTION et al; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,<br><br>Defendant. | : | **Court No. 26-03730** |

**COMPLAINT**

1. Plaintiff, ("**Darfon America Corp.**" or "Plaintiff"), is a U.S. importer of products subject to the duties challenged in this lawsuit.

2. As of February 2025, through a series of executive orders, the President of the United States invoked authority pursuant to the International Emergency Economic Powers Act ("IEEPA") to levy substantial new tariffs ("IEEPA duties") on merchandise imported from virtually all foreign nations, including those from which Plaintiff imported its goods. Plaintiff was responsible for paying these tariffs on the imported goods

3. On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding that "IEEPA does not authorize the President to impose tariffs" under the IEEPA. *Learning Res., Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026) (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

4. The Supreme Court also confirmed that challenges to the IEEPA tariffs fall "within the exclusive jurisdiction of" the Court of International Trade. Id. at 5. Thus, this Court has jurisdiction and authority to order remedial relief and refunds of IEEPA duties paid by

importers.

5. Accordingly, for the reasons set out in *Learning Resources*, Plaintiff seeks for itself a full refund from Defendants of all IEEPA duties Plaintiff has deposited and paid to the United States.

6. This action remains necessary because, even though the Supreme Court invalidated the IEEPA duties and the executive orders behind them, importers—including Plaintiff—are not guaranteed refunds absent their own judgment and court-ordered relief.

7. Moreover, the immediacy of this action is compelled by the fact that the entries for which Plaintiff remitted IEEPA-imposed tariffs are liquidating—and may attain finality as a matter of law pursuant to 19 USC §1514, and the concept of "finality of liquidation."

8. Thus, Plaintiff seeks: (i) a declaration that any and all IEEPA duties tendered by plaintiff pursuant to the President's orders are unlawful and (ii) a complete refund of all IEEPA duties deposited up to and including any entries for consumption made prior to 12 am EST, on February 24, 2026.

**PARTIES**

9. Plaintiff, **Darfon America Corp.**, is a U.S. Company headquartered in Taoyuan City, Taiwan.

10. Defendant United States Customs and Border Protection ("CBP"), a component of the Department of Homeland Security headquartered in Washington, D.C., is responsible for border security and for the  collection tariffs, duties, taxes and other fees assessed upon the importation and entry goods.

11. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

12. The United States of America, which collected the disputed tariffs, is the statutory defendant pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

13. Defendants are referred to collectively in this complaint as "CBP".

## JURISDICTION

14. Jurisdiction over this action lies with the Court pursuant to 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). 2026 WL 477534 (U.S. Feb. 20, 2026).

15. The Court has the powers of a United States District Court at law, in equity, and by statute. See 28 U.S.C. § 1585. Under 28 U.S.C. § 1581, it may issue money judgments against the United States and provide other civil relief, including declaratory judgments, injunctions, remand orders, and writs of mandamus or prohibition. See 28 U.S.C. §§ 2643(a)(1), (c)(1).

16. Plaintiff has standing because it is the importer of record for goods subject to the unlawful IEEPA duties collected by CBP. Plaintiff's payment of these duties pursuant to the challenged executive orders has caused injury, which declaratory and injunctive relief from this Court would redress.

## GENERAL PLEADINGS

### I. President Trump invoked IEEPA under his own authority.

#### A. The IEEPA duties

17. Beginning on February 1, 2025, the President issued multiple executive orders imposing tariffs on goods imported from Canada, Mexico, and China, and the rest of the world. Each order purportedly relied on IEEPA authority, with the President asserting that the tariffs were necessitated by a national emergency. These orders are collectively identified in this complaint as the "IEEPA Tariff Orders," and include, but are not limited to:

- Executive Order 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 1, 2025), as amended;
- Executive Order 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 1, 2025), as amended;
- Executive Order 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 1, 2025), as amended;
  - Executive Order 14245, Imposing Tariffs on Countries Importing Venezuelan Oil; 90 *Fed*. Reg. 13829 (Mar. 24, 2025);
  - Executive Order 14257, Regulating Imports with a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15041 (Apr. 2, 2025), as amended;
  - Executive Order 14323, Addressing Threats to the United States by the Government of Brazil, 90 Fed. Reg. 37739 (July 30, 2025); and
  - Executive Order 14329, Addressing Threats to the United States by the Government of the Russian Federation, 90 Fed. Reg. 38701 (Aug. 6, 2025), as amended. In executing the Executive-Order-based tariffs, the Defendant amended the Harmonized Tariff Schedule ("HTS"), mandating that goods subject to the challenged tariffs be entered under new codes.

18. The President has issued further executive orders under IEEPA, imposing additional tariffs and modifying others.

19. CBP continued to collect duties imposed by the Challenged Tariff Orders while the *V.O.S. Selections* litigation and related litigation remained pending, and only just announced on February 22, 2026, that duties imposed under the Challenged Tariff Orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb 22, 2026).

20. By this complaint, Plaintiff seeks relief as a result of all duties it has paid to the United States arising from the IEEPA executive orders ("IEEPA Tariff Orders").

**B. CBP's implementation of the unlawful tariffs**

21. CBP is charged with the assessment and collection of duties, including the IEEPA duties. See 19 U.S.C. §§ 1500, 1502, including those imposed by Executive Order or Presidential Proclamation.

22. The United States International Trade Commission ("USITC") is responsible for publishing and maintaining the HTS pursuant to presidential orders. 19 U.S.C. §§ 1202, 3005, 3006. Judicial decisions confirm that only the President has the authority to modify the HTSUS. See *Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

23. The HTSUS is amended and modified by the USITC, as needed to identify those goods and countries, by HTSUS tariff number, with rate of duty, that are identified or listed in the various IEEPA Tariff Orders.

24. Said tariff numbers and rates of duties are set-forth in Subchapter III, Chapter 99, of the HTSUS, for products subject to the tariffs implemented by the President under the International Emergency Economic Powers Act (50 U.S.C. § 1701 et seq.) ("Temporary modifications of the provisions in the tariff schedule established pursuant to trade legislation.")

25. Under 19 USC §1484, the Importer of Record is responsible for, using reasonable care, declaring the accurate value, tariff classification and rate of duty applicable to the imported merchandise, including those found in Subchapter III, Chapter 99, of the HTSUS.

26. CBP is charged with confirming their classification under the HTS and subsequently assessing and collecting any duties owed in accordance with the tariff rates set forth therein. 19 U.S.C. §§ 1202, 1500, 1502.

27. From the date of imposition of the IEEPA tariffs by the President's Orders identified herein, and further executive orders under IEEPA, imposing additional tariffs and modifying others, Plaintiff tendered and paid said IEEPA tariffs with the filing of its customs entries, up until the termination of said tariffs pursuant to the February 20, 2026 Executive Order, "Ending Certain Tariff Actions," that terminated the collection of the additional ad valorem duties imposed pursuant to the International Emergency Economic Powers Act (IEEPA)."

**C. Liquidation**

28. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

29. CBP fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. See 19 U.S.C. § 1500.

30. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. See 19 U.S.C. § 1504(b).

31. Within certain exceptions, liquidation is 'final and conclusive upon all persons." 19 U.S.C. § 1514(a). *Target Corporation v. United States*, __ F3d. __, No. 23-2274 (Fed. Cir. 2025)

32. Liquidation—unless extended—must happen within one year. See 19 U.S.C. § 1504(a). Typically, CBP liquidates entries 314 days after the date of entry of the goods (automatic liquidation cycle) and will post a notice on its website. 19 C.F.R. § 159.9.

33. CBP has discretion to extend the deadline for liquidation for up to one year

pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

**II. IEEPA does not provide authorization for the tariffs.**

34. The Challenged Tariff Orders rely on several statutory authorities: the International Emergency Economic Powers Act (IEEPA, 50 U.S.C. § 1701 et seq.), the National Emergencies Act (NEA, 50 U.S.C. § 1601 et seq.), § 604 of the Trade Act of 1974 (as amended, 19 U.S.C. § 2483), and § 301 of title 3 of the United States Code (3 U.S.C. § 301).

35. None of the statutes the government invokes—including IEEPA and the National Emergencies Act, the Trade Act of 1974, or 3 U.S.C. § 301 — provide authority for the President to impose tariffs. The administration and CBP rely solely on IEEPA to justify and collect the so-called "IEEPA duties," but that statute does not explicitly authorize tariff or duty imposition. Recent judicial rulings reinforce that IEEPA's grant of power to "regulate … importation" does not equate to a grant of taxing or tariff authority.

**III. The Supreme Court has held that the IEEPA duties are not authorized.**

36. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

37. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

38. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc.*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

39. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with argument on November 5, 2025.

40. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Res*., slip op. at 20.[1]

**IV. Plaintiff paid IEEPA duties.**

41. As of the date of this complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders.

42. The goods Plaintiff imports from foreign countries into the United States are subject to IEEPA tariffs under HTSUS codes identified in Subchapter III, Chapter 99, of the HTSUS,.

43. Plaintiff has paid IEEPA duties on numerous entries.

44. The entries for which Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders have liquidated or are about to liquidate.

## COUNT I
## THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES* UNDER V.O.S. SELECTIONS

[1] This complaint cites to the "Learning Resources" slip opinion because that was the lead case at the Supreme Court for purposes of the case caption. The Learning Resources case itself was vacated for lack of jurisdiction, while the Federal Circuit's decision in V.O.S. Selections was affirmed.at 21.

45. Plaintiff incorporates paragraphs 1-44 above by reference.

46. The IEEPA tariffs were found to be illegal, null and void in *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), aff'd, 149 F.4th 1312 (Fed. Cir. 2025), cert. granted, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025), and for which the Supreme Court ruled unlawful in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026).

47. On February 20, 2026, the Supreme Court held that the International Emergency Economic Powers Act ("IEEPA") does not authorize the President to impose tariffs, and it affirmed the Federal Circuit's decision invalidating the tariffs President Trump had imposed under IEEPA through various executive orders. *Learning Res., Inc. v. Trump*, 607 U.S. ---, 2026 WL 477534, at *13-14 (U.S. Feb. 20, 2026).

**COUNT II**
**THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN LEARNING RESOURCES**

48. Plaintiff incorporates paragraphs 1-47 above by reference.

49. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and this court's ruling and the Federal Circuit's affirmance of this court's opinion in *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), aff'd, 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods.

*50.* The Supreme Court held that all tariffs imposed under IEEPA are unlawful. In the Supreme Court's words, "[o]ur task … is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." Learning Res., slip op. at 16. The Supreme Court thus affirmed the Federal Circuit's

decision, which for its part had affirmed this Court's ruling on the merits of the IEEPA tariffs. *Id.*

51. The Challenged Tariff Orders purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA.

52. In its motion to the Federal Circuit in V.O.S. Selections to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, V.O.S. Selections, Inc., 149 F.4th 1312 (Fed. Cir. 2025), Dkt. No. 6.

53. This Court is bound by the *Learning Resources* decision and as a result of that decision should order refunds of all IEEPA duties paid by Plaintiff, with interest as provided by law.

**COUNT II**
**(DECLARATORY RELIEF, 28 U.S.C. § 2201)**

54. Plaintiff incorporates paragraphs 1-53 above by reference.

55. A United States court may, under 28 U.S.C. § 2201(a), declare the rights or legal relations of any interested party who requests such a declaration.

56. There is a real and immediate dispute over whether Customs is obligated to refund said IEEPA Tariffs to Plaintiff — making this a proper case for declaratory or injunctive relief.

57. Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA duties.

58. This Court may properly exercise its equitable power to enter a declaratory judgment that the Challenged Tariff Orders are unlawful as applied to Plaintiff, declare that CBP lacks authority to implement or collect the associated tariffs, and thereby grant relief to Plaintiff.

## PRAYER FOR RELIEF

59. Plaintiff respectfully requests that the Court enter judgment in its favor and grant the following relief as to Plaintiff:

a) order CBP to reliquidate any entries that have been liquidated without IEEPA duties;

b) order CBP to liquidate all unliquidated entries subject to IEEPA duties without IEEPA duties;

c) order the United States to refund to Plaintiff the duties collected from Plaintiff on all entries subject to IEEPA duties, with interest as provided by law;

d) award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

e) grant such further relief as this Court deems proper.

60. Award of interest on the refunded duties at the rate authorized by 28 U.S.C. § 1961, or any other applicable statute, from the date of payment to the date of refund.

Dated: August 24, 2026

Respectfully submitted,

/s/ George Tuttle III
GEORGE TUTTLE III
Law Offices of George R. Tuttle, A.P.C.
3950 Civic Center Drive, Ste 102
San Rafael, CA 94903
(415) 288-0428
*Counsel for Plaintiff*